Jerry L. Steering [State Bar No. 122509]
LAW OFFICE OF JERRY L. STEERING
4063 Birch Street
Suite 100
Newport Beach, CA 92660
Telephone: (949) 474-1849
Facsimile: (949) 474-1883
jerrysteering@yahoo.com

Attorney for plaintiff Victor Maldonado

**Law Offices of Jerry L. Steering**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MALDONADO | ) Case No. |
| | ) |
| Plaintiff, | ) COMPLAINT FOR DAMAGES FOR |
| | ) VIOLATION OF FEDERAL |
| vs. | ) CONSTITUTIONAL RIGHTS UNDER |
| | ) COLOR OF STATE LAW |
| COUNTY OF RIVERSIDE, | ) [42 U.S.C. § 1983]  FAILURE TO |
| CHRISTOPHER J. BELLIVAN and | ) PROTECT  INMATE  [U.S. CONST. |
| DOES 1 through 10, inclusive, | ) AMEND. 8], VIOLATION OF RIGHT TO |
| | ) FREEDOM  OF SPEECH / RIGHT TO |
| Defendants. | ) PETITION GOVERNMENT FOR |
| | ) REDRESS OF GRIEVANCES [U.S. |
| | ) CONST. AMEND. 1], AND |
| | ) CALIFORNIA STATE LAW CLAIMS |
| | ) FOR VIOLATION OF CAL. CIVIL CODE |
| | ) § 52.1, NEGLIGENCE AND |
| | ) INTENTIONAL INFLICTION AND |
| | ) EMOTIONAL DISTRESS |
| | ) |
| | ) **JURY TRIAL DEMANDED** |

**COMES NOW** plaintiff Victor Maldonado and shows this honorable court the

following:

COMPLAINT FOR DAMAGES

1

**Law Offices of Jerry L. Steering**

## JURISDICTIONAL ALLEGATIONS

1.      As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the County of Riverside, in the State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

3.      As Plaintiff's California state law claims arise out of the same transactions and occurrences, and out of a common nucleus of operative facts with Plaintiff's federal questions claims, this court has supplemental jurisdiction over Plaintiff's California state law claims under 28 U.S.C. § 1367, and otherwise pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

4.      Plaintiff timely filed his claim for damages against the County of Riverside pursuant to the California Tort Claims Act, Cal. Gov't Code § 900 *et seq.* and said claim was denied by the County on May 16, 2016.

## GENERAL ALLEGATIONS

5.      Plaintiff Victor MALDONADO, hereinafter referred to as "MALDONADO" or "Plaintiff MALDONADO," is a natural person who, at all times complained of in this action, resided in the County of Riverside, in the State of California.

**Law Offices of Jerry L. Steering**

6.      Defendant Christopher Bellivan, hereinafter referred to as "BELLIVAN," is, and was at all times complained of herein, a Deputy Sheriff with the Riverside County Sheriff's Department (hereinafter "RCSD").  At all times complained of herein, BELLIVAN was acting as an individual person under the color of state law, pursuant to his status as a Deputy Sheriff, and was acting in the course of and within the scope of his employment with defendant County of Riverside.

7.      Defendant County of Riverside, hereinafter referred to as "COUNTY," is a municipal entity located in the state of California, within the territorial jurisdiction of this court.

8.      Defendants DOES 1 through 6, inclusive, are sworn peace officers, deputy sheriffs, investigators, custodial officers, jailers, and/or other public officers, officials or employees of Defendant COUNTY and/or the Riverside County Sheriff's Department, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and are otherwise liable to Plaintiff MALDONADO for the acts complained of in this action, but whose identities are unknown to Plaintiff at this time.

9.      Plaintiff is presently unaware of the identities of DOES 1 through 6, inclusive, and will amend this complaint to add and to show the actual names of said DOE defendants, when ascertained by Plaintiff.

COMPLAINT FOR DAMAGES

**Law Offices of Jerry L. Steering**

10.    At all times complained of herein, DOES 1 through 6, inclusive, were acting as individual persons, under the color of state law, pursuant to their authority as sworn peace officers, deputy sheriffs, investigators, dispatchers and/or other public officers, officials or employees of Defendant COUNTY and/or the Riverside County Sheriff's Department, and were acting in the course of and within the scope of their employment with Defendant COUNTY.

11.    Defendants DOES 7 through 10, inclusive, are sworn peace officers, Commanders, Captains, Lieutenants, Sergeants, Assistant Sheriffs, Undersheriff, the Sheriff and/or other supervisory personnel and/or policy makers with final policy making authority employed by the Riverside County Sheriff's Department and/or defendant COUNTY who proximately caused, substantially contributed to, are responsible for, or are otherwise liable for the  injuries, damages, and constitutional violations complained of by Plaintiff MALDONADO in this action, via supervisory liability (i.e. failure to properly supervise, improperly directing, approving/ ratifying actions of subordinates), bystander liability (failing to intervene and stop unlawful actions of subordinates), and/or liability under *Monell v. Department of Social Services*, 436 U.S. 658, 701 (1978) (i.e. policies, customs, and/or practices).

12.    Defendant DOES 7 through 10, inclusive, for purposes of liability under *Monell*, created, implemented, applied, and/or maintained a policy, custom, and/or practice of (1) being deliberately indifferent to a substantial risk of serious physical harm

**Law Offices of Jerry L. Steering**

to protective custody inmates whom RCSD Deputies failed to protect from attacks by other inmates, (2) deliberately failing to train RCSD Deputies in the proper procedures for segregating protective custody inmates and the substantial risk of serious physical harm to protective custody inmates from attacks by other inmates, and (3) covering-up their unlawful and tortious conduct, conduct of Riverside County Sheriff's Department employees/personnel, and/or other agents of CITY.

13.     Plaintiff is presently unaware of the identities of DOES 7 through 10, inclusive, and will amend this complaint to add and to show the actual names of said DOE defendants, when ascertained by Plaintiff.

14.     At all times complained of herein, DOES 7 through 10, inclusive, were acting as individual persons under the color of state law pursuant to their authority as sworn peace officers, Commanders, Captains, Lieutenants, Sergeants, Assistant Sheriffs, Undersheriff, the Sheriff and/or Supervisory personnel or policy makers with final policy making authority for the Riverside County Sheriff's Department and/or Defendant COUNTY, and were acting in the course of and within the scope of their employment with Defendant COUNTY.

15.     Moreover, at all times complained of herein, Defendant DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation, implementation, application, and maintenance of the policy(ies), custom(s), and /or practice(s) of the Riverside County Sheriff's Department / COUNTY of Riverside, for,

*inter alia*: (1) being deliberately indifferent to a substantial risk of serious physical harm to protective custody inmates whom RCSD Deputies failed to protect from attacks by other inmates, (2) deliberately failing to train RCSD Deputies in the proper procedures for segregating protective custody inmates and the substantial risk of serious physical harm to protective custody inmates from attacks by other inmates, and (3) covering-up their unlawful and tortious conduct, conduct of Riverside County Sheriff's Department employees/personnel, and/or other agents of CITY, and were thereby the proximate cause(s) of the same state and federal constitutional violations complained of by Plaintiff MALDONADO in this action.

16.     In addition to the above and foregoing, Defendants DOES 1 through 10, inclusive, acted pursuant to a conspiracy, i.e. an agreement, understanding, and common plan and/or scheme to deprive the Plaintiff of his California state and federal constitutional and statutory rights, and acted in joint and concerted action to so deprive the Plaintiff of those rights as complained of in this action.

17.     Said conspiracy/ agreement/ understanding/ plan / scheme/ joint action/ concerted action, referenced above, substantially and proximately caused the violations of Plaintiff MALDONADO'S state and federal constitutional and statutory rights, as complained of herein.

//

//

COMPLAINT FOR DAMAGES

6

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Eighth Amendment Rights –**
**Cruel/ Unusual Punishment - Failure to Protect Prisoner**
**(By Plaintiff MALDONADO, as Against all Defendants)**

18.     Plaintiff MALDONADO hereby re-alleges and reincorporates by reference all allegations made in paragraphs 1-17.

19.     Between November 12, 2015 and December 1, 2015, Plaintiff MALDONADO was a prisoner in Southwest Detention Center in Riverside County, in the State of California, serving a sentence for a drug crime[1].

20.     As a prisoner serving a sentence as punishment for a crime, Plaintiff MALDONADO had a right under the Eighth Amendment, applicable to the states through the Fourteenth Amendment, to be free from "cruel and unusual punishments." This included the right to be protected from harm at the hands of other prisoners.

21.     On or around Plaintiff MALDONADO's birthday, November 12, 2015, Plaintiff was celebrating with other inmates at the Southwest Detention Center by drinking "pruno,"[2] and doing so with the unofficial approval of RCSD Deputies who were present at that time and date. As Plaintiff recalls, RCSD Deputies told Plaintiff that he would not be disciplined or sent to the "drunk tank" for his celebratory drinking activities.

---

[1] Plaintiff MALDONADO has since been released from Southwest Detention Center.
[2] Pruno is an alcoholic beverage made from a fermented mixture of fruit, candy, ketchup, sugar, milk, bread, and various other foodstuffs. Prison inmates often make and consume pruno, sometimes to the point of alcohol intoxication.

COMPLAINT FOR DAMAGES
7

22.     At that time, Plaintiff was classified as "protective custody" because he has relatives in law enforcement. Under the terms of Plaintiff's protective custody on November 12, 2015, Plaintiff was allowed to associate with a limited number of inmates with similar protective custody classifications for a limited amount of time during the day.

23.     As a result of drinking pruno on his birthday, Plaintiff became intoxicated.

24.     RCSD Deputies ultimately decided that they would take Plaintiff MALDONADO to the "drunk tank." Plaintiff became upset when he realized the Deputies' intention and verbally protested. Plaintiff believed that the Deputies had lied to him, or were otherwise not fairly enforcing rules against him.

25.     Plaintiff MALDONADO refused to heed Deputies' directions and began to criticize the Deputies actions as unfair. Plaintiff was ultimately subdued by the RCSD's "Emergency Response Team" (ERT) after he refused to reenter his cell at the Deputies' direction.

26.     During and throughout the incident of November 12, 2015 (Plaintiff's "birthday incident"), Plaintiff MALDONADO had negative and hostile interactions with many RCSD Deputies. As Plaintiff MALDONADO recalls, he shouted profanity and insults at many of the Deputies. In addition, Plaintiff MALDONADO complained about and verbally protested the manner in which RCSD Deputies treated him during the birthday incident, because he perceived that treatment as unfair.

COMPLAINT FOR DAMAGES

8

27.     After being subdued by the RCSD's ERT Deputies, Plaintiff MALDONADO was taken to the "drunk tank" until he became sober again.

28.     After returning from the "drunk tank," Plaintiff MALDONADO was classified in "administrative segregation" and maintained his classification in protective custody. He was eventually housed in a 16-cell administrative segregation unit in Southwest Detention Center.

29.     Because many inmates are classified in administrative segregation for disciplinary reasons, as opposed to non-disciplinary reasons, a significantly higher concentration of administrative segregation inmates are violent and/or dangerous. Many inmates classified in administrative segregation are heavily involved in prison gang culture, or other criminal organizations. Others are psychologically disturbed, or otherwise more prone to physical violence.

30.     RCSD is aware that administrative segregation inmates are disproportionately violent and dangerous, and the risks associated with such inmate populations are well documented. For that reason, RCSD Deputies must follow strict protocol/policies for housing and transporting administrative segregation inmates at Southwest Detention Center. In particular, Deputies monitoring administrative segregation units must take care to segregate inmates classified in "general population" from those "protective custody." In addition, all inmates in administrative segregation are housed alone in single-occupancy cells, and are not permitted to be in the same room as

any other inmate without handcuffs or wearable restraints. Lastly, no two doors to any two cells in any administrative segregation unit may be open at the same time.

31.     In addition, special RCSD protocol applies to housing and transport of protective custody inmates. Both RCSD Deputies and inmates are generally aware of ubiquitous traditions/customs among prison gangs in Riverside County and throughout Southern California which urge, glorify, promote, and/or require gang members to attack, or even kill, inmates classified in protective custody[3]. This is because many protective custody inmates are ex-gang members, informants, ex-law enforcement, pedophiles, notorious criminals, or are otherwise popular targets for gang assaults. Such violent gang traditions/customs are common knowledge among RCSD Staff, and attacks on protective custody inmates would occur with veritable certainty in the absence of strict housing protocol for protective custody inmates.

32.     In the weeks following Plaintiff MALDONADO's birthday incident, Plaintiff became aware that many RCSD Deputies were angry/upset with him personally. Plaintiff heard, from speaking with various inmates and staff in the Southwest Detention Center, that RCSD Deputies took offense to Plaintiff MALDONADO's vocal protestations during the birthday incident, and that they resented him for his "challenge" of their authority during that incident. As Plaintiff recalls, many of the RCSD Deputies in

---

[3] Sometimes specific individuals are targeted on a gang's "bad news list," or "hard candy" list. Other times, inmates may be targeted pursuant to a gang leader's directive, such as a "general order" to assault or kill inmates with a particular classification.

**Law Offices of Jerry L. Steering**

**Law Offices of Jerry L. Steering**

Southwest Detention Center are tight-knit socially, and they are generally very defensive of other Deputies faced with actual or perceived challenges from inmates.

33.   On the morning of December 1, 2015, Deputy Defendant Christopher BELLIVAN opened the door to Plaintiff Maldonado's cell (cell #CH-44). At that time, Plaintiff had been sleeping.

34.   Cell doors cannot be opened or closed manually by inmates in the administrative segregation units of Southwest Detention Center. Although RCSD Deputies may open/close cell doors manually using keys, Deputies typically open/close cell doors electronically/mechanically by activating a system of switches and/or buttons located in an adjacent control room. From this control room, RCSD Deputies can directly monitor the opening/closing of cell doors by observing through a shatter-proof mirrored security window.

35.   Accordingly, when Deputy BELLIVAN opened the door to Plaintiff MALDONADO's cell, he did so from an adjacent control room, by activating the necessary switches and/or buttons.

36.   When Deputy BELLIVAN opened the door to Plaintiff MALDONADO's cell, he directly observed it opening from his position behind a shatter-proof mirrored security window in an adjacent control room. From Deputy BELLIVAN's position in the control room, he had a clear and unobstructed view of each cell doorway in the sixteen-cell administrative segregation unit.

COMPLAINT FOR DAMAGES

11

37.     Deputy BELLIVAN, using a loudspeaker / intercom system, instructed another inmate, Victor Quines (hereinafter "inmate Quines") to "lock it down," meaning "enter the cell." At that time, inmate Quines was standing in the "day room" area of the unit, just outside of Plaintiff MALDONADO's cell[4].

38.     Inmate Quines is classified in "general population" and "administrative segregation" ("GP/AS"). By contrast, as mentioned above, Plaintiff MALDONADO is classified in "protective custody" and "administrative segregation" ("PC/AS"). Inmate Quines was housed in the cell immediately adjacent to the cell in which Plaintiff MALDONADO was housed.

39.     Notwithstanding the other intentional and/or deliberately indifferent actions of RCSD Deputies with regard to Plaintiff MALDONADO as alleged in this complaint, the housing of a GP/AS inmate, such as inmate Quines, in the same administrative segregation unit as a PC/AS inmate, such as Plaintiff, posed a grave safety risk to Plaintiff which Defendants Deputy BELLIVAN and DOES 1 through 10, inclusive, knew about and intentionally disregarded or reasonably should have known about.

40.     As of December 1, 2015, Plaintiff MALDONADO and inmate Quines did not have any feud, grudge, ill-will, spite, vendetta, or otherwise negative feelings between themselves. Plaintiff MALDONADO's limited interactions with inmate Quines up until that point had all been friendly.

---

[4] Plaintiff's cell door opened into the day room portion of the unit. There is no hallway connecting them.

COMPLAINT FOR DAMAGES

**Law Offices of Jerry L. Steering**

41.     At the time of the subject incident, inmate Quines is/was a member of, or affiliated with, the "Sureños" prison gang.

42.     In response to Deputy BELLIVAN's command to "lock it down," inmate Quines immediately entered Plaintiff MALDONADO's cell.

43.     Upon entering Plaintiff MALDONADO's cell, inmate Quines produced a jail-made makeshift knife (a "shank"), and proceeded to stab Plaintiff repeatedly with that knife. Inmate Quines, in addition to stabbing, also punched Plaintiff repeatedly.

44.     When inmate Quines began stabbing Plaintiff MALDONADO, the door to Plaintiff's cell (cell #CH-44) was still open. Plaintiff MALDONADO, who was sleeping, woke up upon being stabbed for the first time[5].

45.     Seconds after inmate Quines began stabbing Plaintiff MALDONADO, Deputy BELLIVAN activated the switch(es) and/or button(s) to close the door to Plaintiff's cell. The cell door closed with Quines and MALDONADO inside.

46.     Inmate Quines stabbed Plaintiff MALDONADO in the shin, thigh, torso, and ear. Inmate Quines sliced Plaintiff's ear to the point of nearly severing it. Plaintiff MALDONADO, who was reclining at the time, sought to dodge and block inmate Quine's attacks.

---

[5] The allegations regarding events on December 1, 2015 which took place before Plaintiff MALDONADO woke up are recreated based on conversations Plaintiff had with RCSD Deputies about the contents of a security video recording of the subject incident, as well as conversations Plaintiff had with other inmates about the subject incident.

COMPLAINT FOR DAMAGES

13

47.     Plaintiff estimates that Deputy BELLIVAN kept the door of Plaintiff MALDONADO's cell closed for approximately 60-90 seconds.

48.     After the door to Plaintiff MALDONADO's cell re-opened, Plaintiff ran out of his cell and into the day room, bleeding extensively.

49.     As Plaintiff MALDONADO exited his cell, inmate Quines flushed the knife down the toilet in Plaintiff's cell.

50.     After flushing the knife, inmate Quines exited Plaintiff's cell and chased after Plaintiff MALDONADO. Inmate Quines caught up to Plaintiff in the day room and resumed punching Plaintiff if the face and head. At that time, Plaintiff fell to the floor of the day room.

51.     In response to inmate Quines's attack on Plaintiff MALDONADO, RCSD Deputies began spraying both Plaintiff and Quines with pepper spray. In addition, Deputies began firing pepper balls at Quines.

52.     Plaintiff MALDONADO was handcuffed and taken to see the nurse at Southwest Detention Center. The nurse inspected Plaintiff's injuries and cleaned the blood from his wounds.

53.     While Plaintiff MALDONADO was in the nurse's office/station, Deputies took pictures of Plaintiff's injuries and took a small statement from Plaintiff.

54.     A short time later, RCSD Deputies took Plaintiff MALDONADO to the emergency room at Riverside County Medical Center in Moreno Valley (RCMC). As

COMPLAINT FOR DAMAGES

14

Plaintiff recalls, it was approximately 30 minutes before RCSD Deputies transported him to the hospital.

55.     At the RCMC, Plaintiff MALDONADO received stitches for multiple stab wounds and an MRI for his head injuries. Plaintiff suffered stab wounds at four locations on his body: (1) his left shin, (2) his upper left thigh, (3) his left ear, and (4) his left hand.

56.     Plaintiff believes that he was transported to the hospital by RCSD Deputies Buck and Stewart[6]. On the way to the hospital, the Deputies told Plaintiff MALDONADO that they had watched the security of video of the incident with inmate Quines. The Deputies told Plaintiff that, immediately before the stabbing, inmate Quines was in the day room outside of Plaintiff's cell, drinking coffee and talking to another GP/AS inmate named "Alex" who was housed in a cell adjacent to Plaintiff.

57.     Plaintiff also recalls another RCSD Deputy, last name Soto, mentioning that he had seen video, and making jokes about how Plaintiff ran out of the cell with his hands flailing.

58.     Based on conversations Plaintiff has had or overhead with Deputies and other inmates, Plaintiff MALDONADO believes that most of the RCSD Deputies at Southwest Detention Center have seen the video.

59.     As Plaintiff MALDONADO recalls, persons who claim to have seen the video of the December 1, 2015 stabbing incident with inmate Quines say that an RCSD

---

[6] Plaintiff does not recall the first names of these RCSD Deputies at this time.

COMPLAINT FOR DAMAGES

15

**Law Offices of Jerry L. Steering**

Deputy, likely Deputy BELLIVAN, closed inmate Quines's cell door prior to opening Plaintiff's cell.

60.     Plaintiff MALDONADO has been informed that RCSD Deputies are not permitted to close cell doors of inmates who are in the day room, and that no two cell doors may be open at the same time. Plaintiff has also been informed that there may be an alarm or other security feature which alerts Deputies when more than one cell door is open simultaneously. These facts, taken as true, significantly reduce the possibility that a Deputy would mistakenly or accidentally open a cell door for the wrong inmate.

61.     Plaintiff MALDONADO also recalls that, after the incident, several RCSD Deputies made off-hand comments to him about the incident such as "that's what you get," or otherwise suggested that Plaintiff deserved the stabbing.

62.     Based on the foregoing, Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, intentionally opened Plaintiff MALDONADO's cell door on December 1, 2015 to allow inmate Quines to enter.

63.     By opening Plaintiff MALDONADO's cell door, thereby allowing inmate Quines to enter and attack Plaintiff, Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, failed to protect Plaintiff MALDONADO from a substantial risk that other inmates would attack him and inflict serious bodily harm based on his classification in protective custody.

COMPLAINT FOR DAMAGES

16

64.     Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, knew that Plaintiff MALDONADO faced a substantial risk that other inmates would attack him and inflict serious harm based on his classification in protective custody.

65.     Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, disregarded the risk that such an attack would happen to Plaintiff MALDONADO and failed to take reasonable measures to prevent such an attack, and were thus deliberately indifferent to the substantial risk that it would happen.

66.     Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, by disregarding the aforementioned risk of attack and failing to take reasonable measures to avoid it, caused Plaintiff MALDONADO suffer serious bodily harm in the form of multiple stab wounds and blunt force head trauma.

67.     In addition, Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, by disregarding the aforementioned risk of attack and failing to take reasonable measures to avoid it, caused Plaintiff MALDONADO suffer serious harm in the form of pain and suffering and emotional distress.

68.     Accordingly, by failing to protect Plaintiff MALDONADO from harm at the hands of another prisoner as alleged above, Defendants RCSD Deputy BELLIVAN and DOES 1 through 6, inclusive, violated Plaintiff MALDONADO's Eighth Amendment right to be free from "cruel and unusual punishments."

COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

69.     Defendant DOES 7 through 10, inclusive, in their roles as RCSD supervisors of Defendants Deputy BELLIVAN and DOES 1 through 6, knew that Deputy BELLIVAN and DOES 1 through 6 were housing and transporting inmates in protective custody with deliberate indifference to the substantial risk that those inmates would be attacked and seriously harmed by other inmates based on their protective custody classification, yet DOES 7 through 10, inclusive, failed to intervene and stop the conduct of Deputy BELLIVAN and DOES 1 through 6, inclusive.

70.     Moreover, Defendant DOES 7 through 10, inclusive, in their roles as RCSD supervisors of Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, failed to train Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, properly with regard to housing and transporting protective custody inmates, and disregarded the known and/or obvious consequence that failing to properly train RCSD Deputies, such as Deputy BELLIVAN or DOES 1 through 6, inclusive, would cause RCSD Deputies to violate the Constitutional rights of inmates in protective custody.

71.     Defendant DOES 7 through 10, inclusive, knew or should have known that the actions of Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, as alleged above, would subject protective custody inmates to the risk of attack from other inmates, and thereby violate the Eighth Amendment rights of protective custody inmates.

72.     The failures of Defendant DOES 7 through 10, inclusive, to intervene and properly train Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, were so

closely related to the deprivation of the Plaintiff MALDONADO's Eighth Amendment rights as to be the moving force that caused Plaintiff's ultimate injuries.

73.     Additionally, the training policies of Defendant COUNTY were not adequate to train Defendants RCSD employees BELLIVAN and DOES 1 through 10, to handle the usual, recurring situation of housing and transporting protective custody inmates in Riverside County.

74.     Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train Defendants RCSD employees BELLIVAN and DOES 1 through 10, to handle the usual, recurring situation of housing and transporting protective custody inmates in Riverside County; specifically, that such a failure to train would violate inmates' Eighth Amendment rights by unreasonably subjecting protective custody inmates to the risk of attack by other inmates.

75.     The failure of the Defendant COUNTY to provide adequate training, as alleged above, caused the deprivation of the Plaintiff MALDONADO's Eighth Amendment rights by the Defendants RCSD employees BELLIVAN and DOES 1 through 10; that is, the COUNTY's failure to train is so closely related to the deprivation of Plaintiff MALDONADO's rights as to be the moving force that caused the ultimate injury.

76.     Accordingly, Defendants COUNTY, Deputy BELLIVAN, and DOES 1 through 10, inclusive, are liable to Plaintiff MALDONADO under 42 U.S.C. § 1983 for

**Law Offices of Jerry L. Steering**

COMPLAINT FOR DAMAGES

19

violating Plaintiff's Eighth Amendment right to free from "cruel and unusual punishments."

77.     As a direct and proximate result of the violation caused by Defendants COUNTY, Deputy BELLIVAN, and DOES 1 through 10, inclusive, Plaintiff MALDONADO (1) was substantially physically, mentally and emotionally injured; (2) incurred medical and psychological costs, bills and expenses and (3) incurred other special and general damages and expenses in an amount to be proven at trial which is in excess of $5,000,000.00.

78.     The actions by Deputy BELLIVAN and DOES 1 through 10, inclusive, were committed maliciously, oppressively, and with reckless disregard for Plaintiff MALDONADO's rights, sufficient for an award of punitive/ exemplary damages against all Defendants and each of them, save Defendant COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Rights**
**(By Plaintiff MALDONADO, as Against All Defendants)**

79.     Plaintiff MALDONADO hereby re-alleges and reincorporates by reference all of the allegations set forth in paragraphs 1-78.

80.     At all times complained of herein, Plaintiff MALDONADO had a right under the First Amendment to free expression, and to petition the government for redress of grievances.

COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

81.     On November 12, 2015, during the aforementioned "birthday incident," Plaintiff MALDONADO engaged in a constitutionally protected First Amendment speech activity when he protested the Deputies' treatment as unfair.

82.     Plaintiff MALDONADO recalls that several RCSD Deputies were upset and/or angry with his "challenging" of their authority on November 12, 2015, and that these Deputies suggested he would be made into an example to deter other inmates from challenging and/or criticizing the Deputies' use of authority.

83.     The aforementioned actions of Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, in subjecting and failing to protect Plaintiff MALDONADO from a substantial risk of serious harm at the hands of other inmates, which ultimately resulted in the stabbing and beating of Plaintiff, were taken in retaliation for Plaintiff's exercise of his First Amendment rights, and would chill a person of ordinary firmness from exercising his/her First Amendment right to criticize or protest a government agent's use of authority.

84.     After the stabbing incident of December 1, 2015, Plaintiff MALDONADO recalls that several RCSD Deputies made off-hand comments to him about the stabbing such as "that's what you get," or otherwise suggesting that Plaintiff deserved the stabbing.

85.     Thus, based on the facts and circumstances as alleged above, Plaintiff MALDONADO's protected First Amendment speech was a substantial or motivating

COMPLAINT FOR DAMAGES
21

factor for the actions of Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, in subjecting and failing to protect Plaintiff from a substantial risk of serious harm at the hands of other inmates.

86.     Accordingly, Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, are liable under 42 U.S.C. § 1983 to Plaintiff MALDONADO for violating his First Amendment right to free expression, and to petition the government for redress of grievances.

87.     As a direct and proximate result of the violation caused by Defendants COUNTY, Deputy BELLIVAN, and DOES 1 through 10, inclusive, Plaintiff MALDONADO (1) was substantially physically, mentally and emotionally injured; (2) incurred medical and psychological costs, bills and expenses and (3) incurred other special and general damages and expenses in an amount to be proven at trial which is in excess of $5,000,000.00.

88.     The actions by Deputy BELLIVAN and DOES 1 through 10, inclusive, were committed maliciously, oppressively, and with reckless disregard for Plaintiff MALDONADO's rights, sufficient for an award of punitive/ exemplary damages against all Defendants and each of them, save Defendant COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

//

//

**Law Offices of Jerry L. Steering**

# THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Under California State Law
### (By Plaintiff MALDONADO, as Against All Defendants)

89.   Plaintiff MALDONADO hereby re-alleges and reincorporates by reference all of the allegations set forth in paragraphs 1-88.

90.   The conduct of Defendants RCSD Deputy BELLIVAN and DOES 1 through 6, inclusive, in intentionally failing to protect Plaintiff MALDONADO from a substantial risk of serious harm at the hands of other inmates, which ultimately resulted in the stabbing and beating of Plaintiff, was extreme and outrageous.

91.   In subjecting Plaintiff to, and failing to protect him from a substantial risk of serious harm at the hands of other inmates, Defendants RCSD Deputy BELLIVAN and DOES 1 through 6, inclusive intended to cause Plaintiff MALDONADO to suffer emotional distress or recklessly disregarded the probability that Plaintiff would suffer emotional distress.

92.   Plaintiff MALDONADO did in fact suffer severe emotional distress, as documented by mental health practitioners within the Southwest Detention Center.

93.   The actions of Defendants RCSD Deputy BELLIVAN and DOES 1 through 6, inclusive, were a substantial factor in causing Plaintiff MALDONADO to suffer severe emotional distress.

94.   Defendants are liable to Plaintiff MALDONADO pursuant to Cal. Gov't Code §§ 815.2, 820, 820.8 and otherwise pursuant to the common law.

COMPLAINT FOR DAMAGES

**Law Offices of Jerry L. Steering**

95.     As a direct and proximate result of the violation caused by Defendants Deputy BELLIVAN, and DOES 1 through 6, inclusive, Plaintiff MALDONADO (1) was substantially physically, mentally and emotionally injured; (2) incurred medical and psychological costs, bills and expenses and (3) incurred other special and general damages and expenses in an amount to be proven at trial which is in excess of $5,000,000.00.

96.     The actions by Deputy BELLIVAN and DOES 1 through 6, inclusive, were committed maliciously, oppressively, and with reckless disregard for Plaintiff MALDONADO's rights, sufficient for an award of punitive/ exemplary damages against all Defendants and each of them, save Defendant COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

## FOURTH CAUSE OF ACTION
## VIOLATION OF CAL. GOV. CODE § 52.1 (BANE ACT)
### Under California State Law
### (By Plaintiff MALDONADO, as Against All Defendants)

97.     Plaintiff MALDONADO hereby re-alleges and reincorporates by reference all of the allegations set forth in the paragraphs 1-96.

98.     As set forth above, Defendants Deputy BELLIVAN and DOES 1 through 10, inclusive, were *deliberately indifferent* to a substantial risk that failing to protect Plaintiff MALDONADO from attacks at the hands of other inmates would result in serious physical harm to Plaintiff, and thus violated Plaintiff's right under the Eighth Amendment to be free from "cruel and unusual punishments."

COMPLAINT FOR DAMAGES

99.   As many Courts have recognized, Constitutional violations caused with "deliberate indifference" are sufficiently intentional to for purposes of satisfying the element of "threats, intimidation or coercion" under California's Bane Act.

100.   As a result of Defendants' violations of Plaintiff MALDONADO's Eighth Amendment rights, Plaintiff sustained physical injuries in the form of four stab wounds and blunt force head trauma.

101.   In addition, Defendants' violation of Plaintiff MALDONADO's Eighth Amendment rights caused great pain and suffering and emotional distress for plaintiff.

102.   Defendants' violation of Plaintiff MALDONADO's Eighth Amendment rights was a substantial factor in causing the physical, mental, and emotional harm described above.

103.   Moreover, Defendants are liable to Plaintiff MALDONADO pursuant to Cal. Gov't Code 815.2, 820, 820.8 and otherwise pursuant to the common law.

104.   As a direct and proximate result of the violation caused by Defendants Deputy BELLIVAN, and DOES 1 through 6, inclusive, Plaintiff MALDONADO (1) was substantially physically, mentally and emotionally injured; (2) incurred medical and psychological costs, bills and expenses and (3) incurred other special and general damages and expenses in an amount to be proven at trial which is in excess of $5,000,000.00.

105.   The actions by Deputy BELLIVAN and DOES 1 through 6, inclusive, were

Law Offices of Jerry L. Steering

**Law Offices of Jerry L. Steering**

committed maliciously, oppressively, and with reckless disregard for Plaintiff MALDONADO's rights, sufficient for an award of punitive/ exemplary damages against all Defendants and each of them, save Defendant COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

106.   In addition, because the actions of Defendant Deputies BELLIVAN and DOES 1 through 6, inclusive, as complained of herein, constituted a violation of California Civil Code § 52.1, Plaintiff MALDONADO is entitled to an award of treble compensatory damages against all Defendants, and each of them.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE**
**Under California State Law**
**(By Plaintiff MALDONADO, as Against All Defendants)**

107.   Plaintiff MALDONADO hereby re-alleges and reincorporates by reference all of the allegations made in paragraphs 1-106.

108.   Defendants RCSD Deputy BELLIVAN and DOES 1 through 6, inclusive, owed a duty of care to Plaintiff MALDONADO by virtue of the special relationship that existed between Defendants and Plaintiff as jailer and prisoner, respectively. Specifically, Under California law, Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, had a duty to protect Plaintiff from criminal acts of third parties, including physical assaults/batteries.

109.   Defendants Deputy BELLIVAN and DOES 1 through 6, inclusive, failed to protect Plaintiff MALDONADO from attacks at the hands of other prisoners, and

COMPLAINT FOR DAMAGES

26

**Law Offices of Jerry L. Steering**

otherwise failed to take reasonable measures to avert such attacks. Defendants were thus negligent with respect to the duty they owed Plaintiff.

110. As a result of Defendants' negligence, Plaintiff MALDONADO suffered serious bodily harm in the form of multiple stab wounds and blunt force head trauma. Plaintiff's physical injuries were accompanied by great pain and suffering.

111. As a result of Defendants' negligence, Plaintiff MALDONADO suffered severe emotional distress in the form of anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and/or shame which an ordinary, reasonable person would not be able to cope with.

112. Defendants' negligence, as set forth above, was a substantial factor in causing Plaintiff MALDONADO's serious emotional distress.

113. Moreover, Defendants are liable to Plaintiff MALDONADO pursuant to Cal. Gov't Code §§ 815.2, 820, 820.8 and otherwise pursuant to the common law.

114. As a direct and proximate result of the violation caused by Defendants Deputy BELLIVAN, and DOES 1 through 6, inclusive, Plaintiff MALDONADO (1) was substantially physically, mentally and emotionally injured; (2) incurred medical and psychological costs, bills and expenses and (3) incurred other special and general damages and expenses in an amount to be proven at trial which is in excess of $5,000,000.00.

115. The actions by Deputy BELLIVAN and DOES 1 through 6, inclusive, were

committed maliciously, oppressively, and with reckless disregard for Plaintiff MALDONADO's rights, sufficient for an award of punitive/ exemplary damages against all Defendants and each of them, save Defendant COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

**WHEREFORE**, plaintiff prays for judgment as follows:

a) For a judgment against all Defendants for compensatory damages in an amount in excess of $5,000,000.00, including treble damages in the amount of $15,000,000.00.

b) For a judgment against all Defendants, save Defendant COUNTY, for punitive damages in an amount in excess of $5,000,000.00;

c) For an award of reasonable attorney's fees and costs;

d) For a trial by jury; and

e) For such other and further relief as this honorable court deems just and equitable.

_____

JERRY L. STEERING

COMPLAINT FOR DAMAGES

28